IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MATTHEW DAVID MILLER            PLAINTIFF

v.           Civil No. 05-6057

OFFICER WILLIS, Jailer;
and SGT. ANSLY;
           DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Matthew David Miller, a former inmate of the Garland County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Miller contends his constitutional rights were violated in the following ways: (1) he was subjected to unreasonably dangerous conditions when he was left for several hours in a cell that had water on the floor; and (2) he was denied adequate medical care.

On March 1, 2006, defendants filed a motion for summary judgment (Doc. 22). By order entered on April 6, 2006 (Doc. 27), Miller was directed to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. On April 25, 2006, plaintiff's response to the court's questionnaire (Doc. 28) was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

# I. BACKGROUND

Miller was booked into the Garland County Detention Center (GCDC) on April 28, 2005. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. He was charged with failing to appear on a felony charge of possession of a controlled substance. *Id.* at ¶ 2.

On July 28, 2005, Miller entered into a plea agreement and was sentenced to sixty (60) months at the Arkansas Department of Correction (ADC). *Resp.* at ¶ 4. He remained incarcerated at the GCDC until he was transferred to the ADC on September 13, 2005. *Id.* at ¶ 3.

Captain Mel Steed is the jail administrator of the GCDC. *Resp.* at ¶ 5. The GCDC has in place a policy that requires the provision of medical care to inmates. *Id.* at ¶ 6(A). In the case of an inmate needing non-emergency medical care, the inmate is directed to complete a medical request form which is reviewed by the supervisor and then forwarded to Dr. Hale. *Id.* at ¶ 6(B). If the decision is made that the inmate needs to see the doctor, the inmate is scheduled to see Dr. Hale at his regular visit. *Id.* at ¶ 6(C).

According to Steed, Dr. Hale sees inmates at the jail at least once a week. *Affidavit of Mel Steed* at ¶ 4. According to Miller, Dr. Hale "is a free world doctor and has a busy schedule." *Resp.* at ¶ 6(D). Miller maintains Dr. Hale's schedule is sometimes so full he will miss a week at the jail. *Id.* Miller indicates it happened while he was at the GCDC. *Id.*

All directives of Dr. Hale regarding prescription medication, referrals, x-rays, etc., are complied with by GCDC staff. *Resp.* at ¶ 6(E). In emergency medical situations, inmates are either transported to the emergency room or an ambulance is summoned to provide emergency

medical care. *Steed Affidavit* at ¶ 4. Miller notes Steed's affidavit does not address how it is determined what constitutes an emergency. *Resp.* at ¶ 6(F).

Steed maintains that no inmate is denied medical care. *Steed Affidavit* at ¶ 5. Miller disagrees. *Resp.* at ¶ 6(G). He maintains he has been denied medical care numerous times as is evidenced by his grievance forms. *Id.* Miller states that an inmate only get immediate medical attention if the medical condition is noticeable such as when trauma is clearly visible. *Id.* If there is no evidence of visual trauma, Miller maintains, it is not considered to be an emergency situation at the GCDC. *Id.* Miller states he was lying on the floor in the holding cell in very bad pain and did not get to go to the emergency room. *Id.*

It is the policy of the GCDC to provide a safe environment for all persons detained there. *Resp.* at ¶ 7. If something is in need of repair or is broken, detention center personnel notify the maintenance department to allow them to make all reasonable and necessary repairs. *Id.* at ¶ 8.

On June 7, 2005, Miller's cell-mate Zack Russell, flooded their cell. *Resp.* at ¶ 9. The flood occurred at about 3:30 p.m. *Id.* at ¶ 10(A).

Miller maintains he was not given an opportunity to clean the water from his cell. *Resp.* at ¶ 10(B). There was about two to two and one half inches of water on the cell floor. *Id.* at ¶ 10(C). Miller was not given an opportunity to move to another cell. *Id.* at ¶ 10(D).

Miller agrees that neither Officer Willis nor Sgt. Ansly were responsible for the cell being flooded. *Resp.* at ¶ 16, ¶ 17 & ¶ 63. However, following the flood, Miller contends Willis put blankets in front of the cell door to keep the water from escaping from the cell. *Id.* at ¶ 18. According to Miller, Russell told Willis, Steed and other officers that he was the one who

flooded the cell and that Miller was an innocent bystander. *Id.* At this time, Miller maintains he should have been removed from the cell. *Id.*

Miller asserts that when he asked Willis to let him clean up the cell, Willis responded that they shouldn't have flooded the cell. *Resp.* at ¶ 20. Miller states Willis let everyone else clean their cells up and the day-room floor was also cleaned up. *Id.*

With respect to Ansly, Miller notes he was the officer in charge. *Resp.* at ¶ 19. After Ansly was informed the cell had been flooded and that Russell admitted to the flooding, Miller maintains Ansly should have had Miller removed from the cell to prevent anything from happening to Miller. *Id.*

At about 6:00 p.m., Miller fell when getting down from the top bunk. *Resp.* at ¶ 11. He requested medical attention at 6:10 p.m. and was transported to St. Joseph's emergency room at about 7:00 p.m. *Id.*

At the hospital, x-rays were taken and Miller was given pain pills. *Resp.* at ¶ 13. The x-rays revealed nothing was broken but Miller did indicate his back was hurting. *Id.*

On June 8, 2005, Miller submitted a grievance. *Resp.* at ¶ 21. He stated that he had filled out a medical request stating that his back was hurting. *Id.* He indicated he had not received a response. *Id.* He stated he was in pain and the medicine was not working. *Id.*

In response, Miller was told that he was receiving the medication prescribed by the doctor. *Resp.* at ¶ 22. He was told to fill out another medical request. *Id.*

On June 8, 2005, Miller submitted a medical request. *Resp.* at ¶ 23. He asked that something be done right away because he was having sharp pains in his side. *Id.* In response,

AO72A
(Rev. 8/82)

a note was made that Miller was getting 800 mg of Ibuprofen three times a day as ordered by the emergency room physician. *Id.* at ¶ 24.

On June 9, 2005, Miller submitted a medical complaint. *Resp.* at ¶ 25. He stated he was having very bad back problems going up to his side by his ribs. *Id.* He stated the medicine was not working. *Id.* He asked to be looked at and to be told what was wrong. *Id.*

In response, the nurse told Miller it was normal to have pain after receiving a trauma. *Resp.* at ¶ 26. The nurse stated Miller was being treated as the emergency room physician ordered. *Id.* The nurse stated he did not need to see Miller. *Id.*

On June 9, 2005, Miller submitted a grievance to Captain Steed. *Resp.* at ¶ 27. In the grievance Miller stated that he fell on June 7th because Willis and Officer Halpin would not clean his cell after the flood. *Id.* Miller complained that a blanket was put outside his cell door so that water could not leave his cell. *Id.* He also stated his medicine was not working and nothing was being done about it. *Id.*

Ansly responded that Miller should not have flooded his cell and that he needed to take responsibility for his actions. *Resp.* at ¶ 29. Ansly also stated that Miller was being treated as directed by the emergency room physician. *Id.* at ¶ 30.

On June 17, 2005, Miller was treated by Dr. Hale. *Resp.* at ¶ 31. Dr. Hale noted that Miller had suffered trauma to his back and side from a fall in his cell. *Id.* The doctor prescribed a medical mattress and Ultram for pain. *Id.*

AO72A
(Rev. 8/82)

On June 20, 2005, Miller submitted a medical request in which he stated he had a hole in his leg from a staph infection. *Resp.* at ¶ 32(A). Miller was seen by the nurse that same day. *Id.* at ¶ 32(B). The nurse gave Miller medications and band-aids. *Id.*

On June 29, 2005, Miller submitted a medical request complaining that his back and side were hurting. *Resp.* at ¶ 33. He stated his medication was not working and he needed to be seen. *Id.*

In response, Miller was told that he had been refusing the pain medication that had been prescribed for him. *Resp.* at ¶ 34. The nurse stated that Miller would not get any narcotic medication. *Id.*

On July 2, 2005, Miller submitted a medical request in which he stated he was lactose intolerant and couldn't eat anything at breakfast. *Resp.* at ¶ 35. He also stated he needed his prescription renewed. *Id.* In response, the nurse asked what prescription Miller needed refilled. *Id.* at ¶ 36. Miller received the refill. *Id.*

With respect to his request for a change in his breakfast diet, Miller was asked to explain why this was the first time he had submitted a request stating he was lactose intolerant. *Resp.* at ¶ 38(A). He responded that he thought his medical records from a prior stay at the GCDC would be the same. *Id.* Miller believes the nurse responded by stating that Miller was just trying to get something extra and different from everybody else. *Id.* However, Miller states that he can't say exactly how the nurse responded because all his excess paper work has been taken away from him. *Id.*

AO72A
(Rev. 8/82)

On July 25, 2005, Miller submitted a grievance. *Resp.* at ¶ 39. He stated he had accidentally jammed his finger. *Id.* He indicated he was seen by the nurse and told he could look at it and try to un-jam it or Miller could go to the emergency room at his own expense. *Id.* However, when he attempted to go to the emergency room, he stated Ansly indicated Miller could not go to the emergency room. *Id.*

In response, Miller was told that the nurse would be consulted and if he believed Miller needed medical treatment he would receive it. *Resp.* at ¶ 40. Miller was seen by Dr. Hale on July 29, 2005. *Id.* at ¶ 41. He concluded Miller had a contusion on his left ring finger. *Id.* Dr. Hale prescribed Naprosyn 500 mg., twice a day. *Id.*

On August 5, 2005, Miller submitted a medical request. *Resp.* at ¶ 42. He stated that he had seen the doctor about his finger but that the medicine he was given was not helping. *Id.* He also stated his bone was still pointing upwards. *Id.* He asked to see somebody. *Id.*

In response, a note was made that Miller had a splint on his finger from Dr. Hale. *Resp.* at ¶ 43. Note was also made that his finger was swollen as if jammed. *Id.* Miller was not seen by the doctor or nurse in response to this request. *Id.*

On August 8, 2005, Miller submitted a medical request. *Resp.* at ¶ 45. He stated he had been seen by the doctor and his finger was still in bad condition. *Id.* He asked for medical attention. *Id.*

In response, a note was made that Miller's finger looked better than it had on August 5th. *Resp.* at ¶ 46. Miller was not seen by a doctor or nurse in response to this request. *Id.* at ¶ 47.

AO72A
(Rev. 8/82)

Miller submitted a grievance on August 9th. *Resp.* at ¶ 48. Miller complained that he was not getting medical attention. *Id.* He stated he was in very bad pain. *Id.* He stated he believed the officers were making him suffer. *Id.*

In response, Miller was told that he was on the list to see the doctor on August 11th. *Resp.* at ¶ 49. Miller, however, asserts he did not see the doctor on August 11th. *Id.* at ¶ 50(A).

Miller was seen by Dr. Hale on August 19, 2005. *Resp.* at ¶ 50(B). He noted Miller had some swelling in his finger but good movement. *Id.* Dr. Hale prescribed Ultram for pain. *Id.*

On August 27, 2005, Miller submitted a medical request. *Resp.* at ¶ 51. He stated that his back was hurting. *Id.* He indicated he had been given a medical mattress but that it was not doing any good. *Id.* He stated the medication was not helping with the pain. *Id.*

In response, Miller was told he had been to see Dr. Hale at least two times and had been given pain medication. *Resp.* at ¶ 52. He was told that the pain medication was for his finger but that it worked for all pain. *Id.* He was told the pain medication he was taking was equal to morphine. *Id.*

On September 5, 2005, Miller submitted a medical complaint stating that his lower back was hurting. *Resp.* at ¶ 53. Miller was seen by the nurse in response to the request. *Id.* at ¶ 54.

Miller was seen by Dr. Hale on September 8, 2005. *Resp.* at ¶ 55. Dr. Hale noted Miller was complaining of lower back pain. *Id.* Dr. Hale diagnosed Miller with lumbago or chronic pain in the lower back and prescribed an extra mattress if one was available and Ultram, twice a day, for pain. *Id.*

AO72A
(Rev. 8/82)

Miller received all medication prescribed him by the emergency room doctor, Dr. Hale, or the nurse. *Resp.* at ¶ 56. Dr. Hale did not order that Miller undergo any type of surgical treatment or that he be referred to a different doctor. *Id.* at ¶ 57. All orders given by Dr. Hale concerning Miller's medical care were complied with by the staff of the GCDC. *Id.* at ¶ 58.

The named defendants did not refuse to allow Miller to see Dr. Hale. *Resp.* at ¶ 61. The named defendants did not refuse to secure medical care that had been prescribed by Dr. Hale. *Id.* at ¶ 62.

Willis did not deny Miller medical care. *Resp.* at ¶ 15. However, Miller maintains Sgt. Ansly denied him medical care on numerous occasions. *Id.* at ¶ 14. Miller indicates Ansly told Officer McKinney that Miller's resources had run out and he could not get medical help. *Id.* Miller indicates the second time Ansly denied him medical care was on July 25, 2005, when Miller slammed his finger in the cell door. *Id.* According to Miller, the nurse said he had the right to go the emergency room. *Id.* However, Ansly stated he could only get a finger splint and two Ibuprofen. *Id. See also Resp.* at ¶ 59.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth

specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants have now moved for summary judgment. First, defendants argue that the facts set forth in the light most favorable to the plaintiff fail to establish that they violated the plaintiff's constitutional rights. Second, if an official capacity claim is asserted against them, defendants argue there is no evidence of any custom or policy of Garland County that was a moving force behind any alleged violation of plaintiff's constitutional rights. Finally, defendants contend they are entitled to qualified immunity on any individual capacity claims.

***Conditions of Confinement***

When Miller fell in his cell on June 7, 2005, he was a pretrial detainee. *See Resp.* at ¶ 4. As a pre-trial detainee, he was "outside the protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners." *Hott v. Hennepin County, Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001). Instead, pre-trial detainees are protected by the Fourteenth Amendment guarantees. *Id.* "The Fourteenth Amendment

guarantees pre-trial detainees at least as many protections as does the Eighth Amendment, however, and extends to them as well protection from deprivations that are intended to punish." *Id.*

"Conditions of pretrial confinement are impermissible if they constitute punishment as determined by the due process standards of the Fifth and Fourteenth Amendments." *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996)(*citing, Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). *See also Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*citing Davis v. Hall,* 992 F.2d 151, 152 (8th Cir. 1993) and *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). "[A] pretrial detainee faces a lighter burden to show a constitutional violation than [that required of a convicted person] under the Eighth Amendment." *Smith v. Copeland*, 87 F.3d 265, 268 n. 4 (8th Cir. 1996)(c*iting Bell*, 441 U.S. at 537 n. 16 (due process requires that a pretrial detainee not be punished; the Eighth Amendment requires that the punishment imposed not be cruel and unusual)).

In elaborating on the appropriate standard to be applied to conditions of confinement claims brought by pretrial detainees, the Eighth Circuit in *Smith* said:

> The proper inquiry is whether those conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt. However, not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." The Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned.

*Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996)(citations omitted).

AO72A
(Rev. 8/82)

To prevail on his conditions of confinement claim, the Eighth Circuit has required both inmates and pretrial detainees to show: (1) the condition was serious enough to deprive them of the minimal measure of life's necessities, or to constitute a substantial risk of serious harm; and (2) officials were deliberately indifferent to the inmates' or detainees' health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

Here, there are no genuine issues of fact as to whether defendants acted with deliberate indifference towards Miller's safety. The flood of the cell originated in the cell occupied by Miller and Russell. *Resp.* at ¶ 9. The flood occurred at 3:30 p.m. on June 7, 2005. *Id.* at ¶ 10(A). There was approximately two to two and one half inches of water on the cell floor. *Id.* at ¶ 10(C). Miller fell at about 6:00 p.m.. *Id.* at ¶ 11. He requested medical attention at about 6:10 p.m. *Id.* He was transported to the hospital at about 7:00 p.m. *Id.*

Thus, the flood, Miller's fall, and his being taken for medical care all occurred in a span of less than four hours. "[E]very injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials." *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996). While we do not hold that leaving a pretrial detainee in a flooded cell can never establish a claim of constitutional dimension, we believe that under the circumstances of this case no claim of constitutional dimension is stated. Miller was not left for an extended period of time in the flooded cell and there is simply nothing to support a finding that defendants were aware there was a substantial risk he would fall because of the water on the cell floor and that a fall would cause serious harm. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 110 (8th Cir. 1998)(Plaintiff must prove the officials knew of facts from which they could infer a substantial risk of serious harm existed and that the officials drew that inference); *Smith v. Copeland*, 87 F.3d 265, 268-269

AO72A
(Rev. 8/82)

(8th Cir. 1995)(finding no violation where pretrial detainee was subjected to overflowed toilet in his cell for 4 days; analysis of confinement conditions must be based on totality of circumstances and, to prevail, inmate must show officers were deliberately indifferent to risk of harm posed by conditions).

### *Denial of Adequate Medical Care*

As noted above, Miller was incarcerated at the GCDC from April 28, 2005, until September 13, 2005. *Resp.* at ¶ 1 & ¶ 3. Until July 28, 2005, he was a pretrial detainee. *Resp.* at ¶ 4. Although the denial of medical care claims brought by pretrial detainees are more properly analyzed under the Due Process Clause of the Fourteenth Amendment than the Eighth Amendment, *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004), "[t]he standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)(analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86

-14-

F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Miller makes no argument that Willis denied him medical care. *Resp.* at ¶ 15. Instead, his claim is premised on actions taken by Ansly. *Id.* at ¶ 14 & ¶ 59. He contends Ansly stated Miller could get no medical attention because his resources had run out. *Id.* Additionally, Miller contends Ansly denied him the right to go to the emergency room when he slammed his finger in the cell door.

Miller concedes all medical request forms completed by inmates are reviewed by supervisors at the GCDC and then forwarded to Dr. Hale. *Resp.* at ¶ 6(B). Miller also concedes all directives of Dr. Hale are complied with by GCDC staff. *Id..* at ¶ 6(E).

Miller was taken to the emergency room on June 7, 2005. *Resp.* at ¶ 12. Miller received the medication prescribed by the doctor. *Id.* at ¶ 22. When Miller complained that the medication was not working, his request was responded to by the nurse. *Id.* at ¶ 26.

Miller was seen by Dr. Hale on June 17th. *Resp.* at ¶ 31. On June 20th, he was seen by the nurse. *Id.* at ¶ 32(B).

-15-

On June 29th, Miller complained the medication he was receiving was not working. *Resp.* at ¶ 33. His complaint was responded to by the nurse. *Id.* at ¶ 34. Miller then asked for a prescription refill and was provided it by the nurse. *Id.* at ¶¶ 35-37. Millers' request for a change in his diet based on lactose intolerance was also responded to by the nurse. *Id.* at ¶ 38.

After Miller hurt his finger, he was seen by the nurse. *Resp.* at ¶ 39. When Miller submitted a grievance on July 25th complaining that Ansly would not allow him to go to the emergency room, the nurse was consulted and Miller told if the nurse believed Miller needed medical treatment he would receive it. *Id.* at ¶ 40. Miller was then seen by Dr. Hale on July 29th. *Id.* Miller was seen again by Dr. Hale on August 19th, and September 8th. *Resp.* at ¶ 50(B) & ¶ 55.

Miller received all medication prescribed for him by medical personnel. *Resp.* at ¶ 56. All orders regarding Miller's medical care given by Dr. Hale were carried out by GCDC personnel. *Id.* at ¶ 58.

It is obvious from the undisputed facts that Miller was not denied medical attention by Ansly. Miller received medical attention on multiple occasions and his requests for medical treatment were evaluated by medical personnel. Miller received all medical care ordered by the medical personnel who treated him. He was treated following his fall, his injury to his finger, and his complaints of back pain. While Miller did not believe the treatment he received was adequate, a difference of opinion between Miller and the medical personnel who treated Miller regarding his treatment or the necessity of his going to the emergency room does not give rise to a § 1983 claim. *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *Davis v. Hall*,

AO72A
(Rev. 8/82)

992 F.2d 151, 153 (8th Cir. 1993). We find there are no genuine issues of material fact as to whether Ansly was deliberately indifferent to Miller's serious medical needs.

## IV. CONCLUSION

I therefore recommend that defendants' motion for summary judgment be granted and this case dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of June 2006.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)